## HINES *v.* PICTORIAL REVIEW CO.

1. NAMES—FICTITIOUS TRADE NAME—EVIDENCE.

   Where plaintiff sued defendant for goods returned upon the termination of an agency for certain patterns, testimony tending to show that plaintiff was doing business under an assumed name, which was not legally authorized by filing the certificate of membership required by statute, was properly excluded, as irrelevant, under proofs that the contract was with plaintiff in her own name, that correspondence between the parties was addressed to her and goods invoiced to the individual in her own name.

2. EVIDENCE—VALUE—QUALIFICATIONS.

   It was not erroneous to permit plaintiff to testify relative to the market value of the goods upon proofs that the price charged her at wholesale was the value, and was the amount at which she inventoried the goods, where she had been in the business a year and a half and had acquired some knowledge of the respective values of the goods.

3. SAME—COMPROMISE AND SETTLEMENT—VALUE—RECOUPMENT.

   For goods returned by the agent to vendor the defendant was required to allow a credit of their reasonable value, regardless of whether or not there was a new or compromise agreement between the parties if it accepted and retained them.

4. SAME—TRIAL.

   The court did not err in charging on the subject of rebate or allowance for goods returned, that the fair and reasonable value of the same was not to be determined from the price charged for them by plaintiff but from what they would bring on the market, over and above the cost of reselling, having in mind the fact they were second-hand goods and must be resold.

Error to Lenawee; O'Mealey, J. Submitted April 12, 1916. (Docket No. 120.) Decided July 21, 1916.

Assumpsit in justice's court by Harriet Hines against the Pictorial Review Company for the value of goods returned to defendant. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*Charles L. Robertson* and *James H. Cornelius,* for appellant.

*Baldwin, Alexander & Russell,* for appellee.

STEERE, J. This case was commenced in justice's court, some time prior to October, 1913, and reached this court after three trials, one in justice's court and two in the circuit court of Lenawee county to which it had been appealed. It was first tried in the circuit court on January 15, 1914, resulting in a verdict and judgment for plaintiff in the sum of $80.76, which, upon defendant's motion for a new trial, was set aside on the ground that the verdict was excessive. Upon retrial, had October 15, 1914, a verdict was rendered and judgment entered in favor of plaintiff for $53.91, from which it is removed to this court by a writ of error.

The maximum amount involved, aside from possible interest on balances, appears to be between $73 and $74, claimed as yet owing plaintiff for merchandise returned to defendant with its permission, originally invoiced to her at $187.68, which amount she sought to recover less an account she was owing defendant of $72.80, and a credit for $41.33 secured by her after this action was begun, in some justice's court proceeding called by the trial court a "garnishee suit" and by defendant's counsel a "suit in attachment" against "the James H. Howell Company, with whom the Pictorial Review was doing business."

192 Mich.—17.

Plaintiff resided at Adrian, Lenawee county, Mich., where her two daughters conducted a small store, selling ladies' furnishings, fancy goods, embroidery, etc., under the name of "Hines Sisters."

Defendant is a foreign corporation having its principal offices and place of business in the city of New York, engaged, as its letter head indicates, in issuing the "Pictorial Review, Pictorial Review Fashion Book, Pictorial Review Styles, Pictorial Review Patterns," and selling them through agents together with patterns of various kinds and descriptions, monograms, fashion sheets, embroidery catalogues, and other analogous productions inferentially relating to fashions, modes, and ornamentation of ladies' wearing apparel, all of which is collectively designated by defendant in its letters as "stock" and "goods."

It is conceded that plaintiff and defendant, on December 16, 1910, entered into some sort of an arrangement by which she handled defendant's goods at the Hines Sisters' store in Adrian. Both parties to this business relation refer to it as an agency. Defendant's counsel state in their brief that the parties entered "into a written or printed contract," the contents of which, so far as this court is concerned, is left largely to inference. Aside from the information as to its nature disclosed when it is mentioned in certain letters of the parties discussing their differences, or when incidentally referred to in the oral testimony, the only hint that it was in writing, or who signed it, is by a witness of defendant, who states "Exhibit A, the contract of December 16, 1910, was signed 'Mrs. Harriet Hines.' " We have searched the record in vain for Exhibit A.

Plaintiff testifies, in part:

"I entered into a contract with defendant. It was December 16, 1910. I was engaged in the Pictorial Review pattern business and sold fashion sheets and

monthly magazines, the quarterly fashion book and embroidery catalogue, and conducted business at 5 East Maumee street. I was in half the store operated by the Hines Sisters, who were Florence and Edna Hines and are my daughters. I was not connected with the Hines Sisters, and my business was just Pictorial Review patterns and monograms, and I continued this business for about a year and a half. I discontinued the business with the Pictorial Review Company about the last of April, 1912, and they told me that I could discontinue my agency, pack my goods, and inclose it and ship them and they would give me a proper adjustment. I returned the goods August 8th."

The first indication of dissatisfaction on either side which we are able to discover from the record appears in a letter written to defendant by plaintiff, on January 2, 1912, complaining of defendant having put in another stock right across the road in the store of one James H. Howell, and insisting that the town was not large enough to support two agencies for the same patterns, "especially right opposite each other."

In answer to a later complaining letter of plaintiff's, defendant wrote her on April 20, 1912, saying, in part:.

"After careful consideration, we believe it will be best for you to close your agency at once. You are very much dissatisfied and, to be frank, the account has not been altogether satisfactory to us.  *  *  * Please understand that you are privileged to return your stock to this office and upon receipt an immediate adjustment will be made.  *  *  *  Please see that inventory is sent us at the time it is shipped back."

On June 18, 1912, defendant wrote her in answer to a letter of the 2d inst.:

"Although we thank you for the offer, we do not desire to transfer your Pictorial Review agency to your successor. It will be best for you to return your stock to this address and upon receipt an immediate adjustment will be made. We appreciate the way in which

you have handled our patterns and regret that it is necessary for our business relations to close."

In a letter of August 21, 1912, defendant wrote:

"Regarding the goods you are returning, when received they will be duly credited to your account, and our accounting department will take the matter up with yours to the adjusting of the account."

On September 20th defendant acknowledged receipt of the returned goods.

On November 13, 1912, plaintiff wrote defendant complaining that she had received no answer to her letter of October 27th, nor anything in regard to the settlement of her account for goods returned August 8th, which they should have made with her long ago. This was answered on November 15, 1912, by a letter which discussed the goods she had returned, some of which it was claimed were not returnable and others not in good condition. A balance of $72.88 was claimed to be against her on defendant's books, and an offer of $19.64 was made in settlement of the whole matter. She was also told:

"We wish you to understand clearly now that we are not obliged to take back any of these goods with the exception of $25 worth of patterns which would cover your standing credit indebtedness. * * * If you wish to accept this settlement we will send our check for this amount. If the settlement is not satisfactory to you, we must insist upon payment of your outstanding indebtedness amounting to $46.88"—concluding by asking what disposition she wished made of certain monogram and embroidery patterns claimed not returnable.

Further correspondence followed, and some time later, of the date we are not advised, plaintiff, while in New York, called at defendant's place of business seeking an adjustment and went over the matter with its assistant sales manager of the pattern department.

She testified that in their conversation she offered to take the patterns they claimed were damaged, and asked to see them, but was told they had been thrown out, and she was given no opportunity to examine them.

These pertinent facts stand undisputed. After announcing to plaintiff its purpose to close her agency, defendant first informed her that it was her privilege to return the stock; next declined to permit her to turn the agency over to her successor, and stated it was best for her to return the stock; then wrote her that when the goods she was returning were received they would be duly credited to her account, each time assuring her of a prompt adjustment on receipt of the goods. Under this authority and with these assurances, she returned the stock of goods yet on hand. Defendant had written plaintiff to "see that inventory is sent us at the time it is shipped back." She made an inventory of the stock returned, nailed it on the outside of the box as directed, invoiced at the cost price as originally invoiced to her by defendant, amounting to $187.68. Defendant received and retained these goods.

The quantity of goods returned and amount of invoice at original cost to her are not in question. The primary dispute between the parties was whether she was entitled to be credited with the invoice price, or only with defendant's appraisement of the returned goods, when the promised adjustment should be made and a balance struck between what she owed and her credit for merchandise returned. Upon the trial her claim was for the market value of the goods returned, and defendant claimed a verdict should be directed in its favor.

Certain of plaintiff's letters to defendant, though written in the first person, were signed "Hines Sis-

ters," and defendant sought to show by further testimony in that connection that she was in fact doing business in and under that assumed name, without having filed the certificate required by statute entitling her to maintain this action. Objection to that line of testimony was sustained, and error is assigned upon such ruling. The contract which plaintiff made with defendant was in her own name; the statement of accounts rendered her by defendant were to Mrs. Harriet Hines; its letters to her were mostly addressed to Mrs. Harriet Hines, and all, so far as shown, subaddressed to her as "Dear Madam"; the invoice of goods returned by her to defendant was in her own name and so acknowledged by defendant. Whatever her relations may have been with the Hines Sisters' business generally, it is conclusively shown that the transactions involved here were with her personally, in her own name, and so recognized by both parties. The proposed testimony was irrelevant and properly excluded.

The court permitted plaintiff to testify, over defendant's objection, that the market value of the goods which she returned was $187, the wholesale price originally charged to her and the sum at which she had inventoried the goods when returned to defendant. In that connection she was also permitted to testify, for the purpose of showing the goods were new stock, that she had taken an inventory every six months, returning the old stock of patterns and buying new ones. The objections to this testimony were, "There is no showing she knows what the market value was," and a general objection to "any testimony of any transactions that she had previous to the return shipment of the goods, as being incompetent under the claim of plaintiff * * * for the value of the goods returned in pursuance to a certain claimed agreement"

and as immaterial. Plaintiff had been in the pattern business dealing in these goods for a year and a half, and necessarily acquired some knowledge of their wholesale and retail market value. We think her testimony as to value was competent for the jury to consider, and, as bearing upon how long she had kept these goods in stock, her testimony relative to returning old patterns and buying new ones.

Error is particularly assigned against a portion of the court's charge in which the jury was told that defendant's proposal to return the goods, and plaintiff's acceptance by actually shipping them as directed, constituted a new agreement under which defendant was authorized to appraise the goods and determine the value, but required to act in good faith and allow plaintiff "such credits as the goods were reasonably worth taking into consideration the kind, nature, and character of the same," etc. Defendant urges that no new contract was entered into, for their minds never met on the essentials of a valid agreement; that the price for goods returned was left for future adjustment after defendant received them, and defendant's subsequent offer was refused. While the terms of the correspondence may be incomplete as an executory contract, we are not prepared to hold that under the facts in this case the instruction was prejudicially erroneous, or misleading. If defendant accepted and retained the goods, it was its implied duty to allow plaintiff their reasonable worth.

Defendant has omitted from the record such pleadings as are necessary for a complete understanding of the questions raised, and plaintiff's counsel assert in their brief that they did not declare upon any contract growing out of the letters which passed between the parties, but brought the action to recover the value of these goods delivered to defendant at its request

and accepted by it, for the value of which it was therefore liable.

The charge is somewhat lengthy, and excerpts may be selected from it which are questionable; but a careful consideration of the charge in its entirety, as an instruction to the jury upon the issue left to it, leads us to the conclusion that the single meritorious question of the value of these goods was ultimately fairly submitted in such manner as to be readily understood and create no prejudice against defendant. The court instructed the jury that the goods "were to be treated and regarded by the defendant company, not as new goods, but as secondhand goods in fixing the price which the plaintiff would be entitled to receive from the defendant company." And, also:

"That the fair and reasonable value of the goods is not to be determined from what plaintiff paid for them, but from what they would bring on the market, over and above the cost of reselling; and in this connection you are to take into consideration the nature and character of the goods, and the season of the year, whether or not they were immediately resalable, if salable at all, or must be carried in stock until they became seasonable."

In conclusion, the court further explained and distinctly instructed the jury that the two items of $72.93 and $41.33, before referred to, should be allowed defendant "as against any account you may find, if anything, that was a fair and reasonable market value of the goods."

That the jurors canvassed the issue submitted to them fairly and understandingly, and did not arbitrarily award plaintiff the full invoice price claimed by her, is evidenced in the amount of their verdict, which we cannot say was excessive.

From this record, considered as a whole, we are constrained to conclude that a fair trial was had, the

questions involved fairly submitted, and no prejudicial error demanding a reversal appears.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, BROOKE, and PERSON, JJ., concurred. BIRD, J.. took no part in this decision.